COMMONWEALTH vs. THOMAS KOONCE.

Bristol. May 2, 1994. - July 15, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal*, Instructions to jury, Presumptions and burden of proof, Assistance of counsel, Capital case, Examination of jurors. *Homicide. Self-Defense. Due Process of Law*, Presumption. *Constitutional Law*, Assistance of counsel, Self-incrimination. *Jury and Jurors. Witness*, Self-incrimination. *Waiver.*

In a murder case, the judge correctly denied the defendant's motion for a new trial based on a single patently incorrect statement by the judge in his instructions to the jury to the effect that "the defendant [must] prove[ ] beyond a reasonable doubt that the defendant used excessive force in defending himself," where the challenged language, although erroneous, would not, in light of the judge's repeated correct instructions concerning manslaughter or self-defense, cause a reasonable jury to shift the burden of proving manslaughter or self-defense to the defendant. [370-375]

In the circumstances of a murder trial, defense counsel's failure to request that the judge conduct an individual voir dire of the jurors on the issue of racial bias was neither inappropriate nor likely to have influenced the jury's verdict unfairly, rather it was a tactical choice that did not create a substantial likelihood of a miscarriage of justice. [375-377]

At the retrial of a murder indictment following a mistrial after the jury were unable to reach a verdict, the judge correctly concluded that a defense witness who had taken the stand and answered several preliminary questions had not knowingly or voluntarily waived his privilege against self-incrimination by testifying for the Commonwealth at the first trial and correctly allowed the witness to claim his privilege against self-incrimination at the retrial. [377-379]

INDICTMENT found and returned in the Superior Court Department on August 4, 1987.

Following review by this court, 412 Mass. 71 (1992), the case was tried before *Walter E. Steele*, J., and a motion for a new trial was heard by him.

*Stephen Hrones* for the defendant.

*David B. Mark*, Special Assistant District Attorney, for the Commonwealth.

LYNCH, J. This appeal arises out of the defendant's retrial on an indictment charging murder in the first degree. A mistrial was declared after the jury were "unable to reach a unanimous decision" on the issue of self-defense, and we affirmed the decision of a single justice denying the defendant's petition under G. L. c. 211, § 3 (1992 ed.), that the indictment be dismissed based on common law double jeopardy grounds. *Koonce* v. *Commonwealth*, 412 Mass. 71, 71-72, 76 (1992).[1] On June 23, 1992, a jury convicted the defendant of murder in the first degree. The defendant appeals from this conviction and the denial of his motion for a new trial. He argues that the judge's instructions erroneously placed the burden on the defendant to prove the crime of manslaughter, that he received ineffective assistance of counsel, that the judge erred in allowing a defense witness to exercise his privilege against self-incrimination during his testimony, and that this court should exercise its power under G. L. c. 278, § 33E (1992 ed.), and order a new trial. We affirm the conviction and conclude that there is no basis for the exercise of our power under G. L. c. 278, § 33E.

We briefly summarize the evidence presented at the second trial. On July 20, 1987, the defendant, James Reace, Kevin Hamilton, and Andy Webb were driving in Reace's 1981 Chevrolet Monte Carlo automobile. The group traveled to a nightclub in Westport. Near closing time, a fight between groups from New Bedford and Brockton occurred, but the defendant and his friends were not involved in the fight. The defendant and his friends then went to a Burger King restaurant in Dartmouth where another encounter between New Bedford and Brockton groups occurred. According to Reace,

---

[1] We reasoned that the evidence at the first trial, viewed in the light most favorable to the Commonwealth, was sufficient for a jury to find, beyond a reasonable doubt, that "the defendant failed to exhaust all reasonable means of escape or retreat to avoid physical combat before resorting to the use of deadly force." *Koonce* v. *Commonwealth*, 412 Mass. 71, 74 (1992).

the defendant pulled out a gun at the Burger King and became upset when the gun jammed.

After leaving Burger King, the defendant and his friends, as well as another group from Brockton, proceeded to New Bedford, parked their automobile, and walked to the United Front housing development. Reace had a shotgun and the defendant was also armed. Some young women drove past them and informed the New Bedford people that Brockton people had arrived. A large group from New Bedford, including the victim, then chased the defendant and his friends back to their automobile. There was conflicting testimony whether anyone in the New Bedford crowd was armed.[2] During the chase, the New Bedford group beat a member of the other Brockton group. In addition, they smashed his automobile's windows.

When the defendant and his friends entered their automobile, their path was blocked by another automobile. While they were trapped, the crowd from New Bedford continued in its pursuit. Once the path of the defendant and his friends cleared, Reace accelerated. After the automobile accelerated, Reace testified he heard a gunshot from the passenger's side of the automobile where the defendant was sitting. Another passenger stated that he thought someone had been hit and the defendant said he had not aimed at anyone but rather pointed to the sky. The victim was fatally wounded. There was conflicting testimony concerning how close the New Bedford group came to the automobile. The automobile, however, was not touched or damaged. At some point after Reace was arrested, the defendant and his mother arrived at the Brockton police station and stated that he did not want his friend to pay for his mistake and that he "did it." The defendant maintained that "[he] wouldn't have done it if [he] didn't have to." The defendant told the police that he had discarded the gun after the shooting.

---

[2]There was testimony that the New Bedford crowd was armed with, among other things, bats. Another witness stated that the crowd was unarmed.

The defendant argues that the judge's instructions misstated the Commonwealth's burden of proof on the issues of manslaughter and absence of self-defense, that he received ineffective assistance of counsel because his defense counsel did not request voir dire questions on the issue of racial prejudice, that the judge erred in allowing a witness, who testified at the first trial, to stop his testimony and exercise his privilege against self-incrimination under the Fifth Amendment to the United States Constitution, and that this court should, pursuant to G. L. c. 278, § 33E, order a new trial.

1. *Jury instructions.* During his instructions the trial judge stated:

> "Also, you may not return a verdict of guilty of manslaughter unless the *defendant* proves beyond a reasonable doubt that the defendant used excessive force in defending himself, again in the circumstances as you see them" (emphasis added).

In denying the defendant's motion for a new trial, the judge characterized this error as a "single slip of the tongue during an exhaustive 45-page charge [that] was isolated and discrete." We agree.

The defendant avers that the instructions improperly placed the burden of proving manslaughter and self-defense on him, and thus violated his due process rights under the Fourteenth Amendment to the United States Constitution. See *Francis* v. *Franklin*, 471 U.S. 307 (1985); *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975); *Sandstrom* v. *Montana*, 442 U.S. 510 (1979). There is no question that "it is constitutionally impermissible to shift to a defendant the burden of disproving an element of a crime charged." *Commonwealth* v. *Moreira*, 385 Mass. 792, 794 (1982). Therefore, the Commonwealth is required to bear the burden of proof beyond a reasonable doubt that a defendant did not act in self-defense, see *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 691-692 (1976), or that the defendant acted with excessive force, see *Commonwealth* v. *Stokes*, 374 Mass. 583, 593 (1978). The

statement that a verdict of manslaughter was not permissible unless the defendant proved beyond a reasonable doubt that he had used excessive force was patently incorrect. However, "constitutionally erroneous jury instructions are not to be viewed in isolation but rather in the context of the charge as a whole, so that a reviewing court can assess the possible impact of the error on the deliberations of a reasonable juror." *Commonwealth* v. *Repoza*, 400 Mass. 516, 519, cert. denied, 484 U.S. 935 (1987), citing *Francis* v. *Franklin, supra* at 315.

Even taken in isolation the jury would understand that the judge had made an error because there would be no purpose in the defendant proving he used excessive force. This is not like the instruction in *Francis* v. *Franklin,* where the flawed instruction created a mandatory presumption that the jury "must infer the presumed fact if the State proves certain predicate facts." *Francis, supra* at 314 & n.2, citing *Sandstrom, supra* at 517-518. "If a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be *considered in the context of the charge as a whole. Other instructions might explain the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption. Cupp* v. *Naughten,* 414 U.S. 141, 147 (1973)." (Emphasis added.) *Francis* v. *Franklin, supra* at 315. Here the offending language created no such presumption but rather, taken in its literal sense, placed the burden on the defendant of proving something (excessive force) that any reasonable juror would understand was antithetical to his defense. See *Commonwealth* v. *Grant, ante* 76, 84-85 (1994).

In conducting our review we are aware that the defendant did not object to the judge's instruction. He did, however, file a motion for a new trial based on the same ground which the judge considered on the merits. It should be noted that this is the first time this conviction has been reviewed on appeal.

In a similar situation we stated:

"[S]everal factors . . . impact upon the standard of review. We are required to review the defendant's conviction under G. L. c. 278, § 33E. . . . The applicable standard is whether, on review of the entire record as considered in light of the verdict returned by the jury, a substantial likelihood exists that a miscarriage of justice has occurred. *Commonwealth* v. *Dickinson*, 394 Mass. 702, 707 (1985). Furthermore, since the new trial motion, the review of which is also before us, raises the same issue in regard to the [challenged] instruction, that issue has been 'restored to the appellate agenda,' and may be reviewed as fully as if the defendant timely objected." *Commonwealth* v. *Skinner*, 408 Mass. 88, 92 (1990), quoting *Commonwealth* v. *Buckley*, 17 Mass. App. Ct. 373, 374 (1984).

"[W]hether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Commonwealth* v. *Shelley*, 411 Mass. 692, 695 (1992), quoting *Sandstrom* v. *Montana*, *supra* at 514. After discussing murder in the first degree and second degree, the judge instructed the jury:

"If . . . the Commonwealth has not proved beyond a reasonable doubt the elements necessary to prove the defendant guilty of second degree murder, then you may consider whether the Commonwealth has proved the lesser included offense of manslaughter. Now, before I define manslaughter, I made reference earlier to self defense and let me define that specifically now before we discuss manslaughter. Evidence has been offered in this case that the defendant acted in self defense. A person may lawfully use reasonable force to defend himself from a physical attack. Bear in mind that the defendant does not have to prove anything. If evidence of self defense is present, the Commonwealth must prove beyond a reasonable doubt he did not act in

self defense. If the Commonwealth has failed to prove beyond a reasonable doubt that the defendant did not act in self defense, then you must find the defendant not guilty. In other words, if you have a reasonable doubt whether or not the defendant acted in self defense, your verdict must be not guilty.

". . .

"Remember the defendant does not have to prove anything. The prosecution must prove beyond a reasonable doubt that the defendant acted with excessive force. If there is evidence that the defendant may have acted in self defense, then the Commonwealth must prove beyond a reasonable doubt, as I said earlier, that the defendant did not act in self defense. If you determine that the Commonwealth has failed to prove beyond a reasonable doubt that the defendant did not act in self defense, then you must, of course, find the defendant not guilty. In other words, if you have a reasonable doubt as to whether or not the defendant acted in self defense, your verdict must be not guilty. Now, if the Commonwealth fails to prove beyond a reasonable doubt that the defendant did not act in self defense, but the Commonwealth does prove beyond a reasonable doubt that the defendant used excessive force in defending himself in the light of all the circumstances and if death resulted from the use of excessive force, then you may consider whether the defendant is guilty of manslaughter.

". . .

"In order to prove the defendant guilty of voluntary manslaughter the Commonwealth must prove three elements beyond a reasonable doubt: first, that the defendant inflicted an injury upon the victim and from which injury he died; second, that the defendant intentionally killed the victim, but he used excessive force in self de-

fense; third, that the homicide was committed unlawfully without legal excuse or justification. Now, facts or circumstances as I've indicated may mitigate or reduce murder to manslaughter. This is when a person kills using excessive force in self defense. That is what the Commonwealth's theory is. They say that if [the defendant] was justified in using self defense, he used excessive force in defending himself. . . . Also, you may not return a verdict of guilty of manslaughter unless the *defendant* proves beyond a reasonable doubt that the defendant used excessive force in defending himself, again in the circumstances as you see them" (emphasis added).

The instructions continue with a discussion of involuntary manslaughter, the Fifth Amendment, consciousness of guilt, and the defendant's right to choose not to testify.

The misstatement in the instruction came after the judge: correctly stated that it was the Commonwealth's burden to prove manslaughter; twice correctly stated that the defendant did not have to prove anything; twice correctly stated that the Commonwealth must prove beyond a reasonable doubt that the defendant did not act in self-defense; twice correctly stated that, if there was a reasonable doubt as to whether the defendant acted in self-defense, the verdict must be not guilty; and three times correctly stated that the Commonwealth must prove beyond a reasonable doubt that the defendant used excessive force. In addition, the judge informed the jury that the Commonwealth's theory was that, if the defendant was justified in using force, he used excessive force. We conclude that, having reviewed the charge in its entirety, the challenged language, although erroneous, would not cause a reasonable jury to shift the burden of proving manslaughter or self-defense to the defendant. We base our conclusion on the judge's repeated correct instructions concerning the burden for manslaughter and self-defense, the judge's repeated and emphatic instruction that "the defendant does not have to prove anything," and the fact that the

offending language was meaningless in the context of the trial and the charge as a whole. The error did not unconstitutionally place the burden on the defendant and was not likely to cause a miscarriage of justice. See *Commonwealth* v. *Grant, supra.*

2. *Ineffective assistance of counsel.* Because the defendant was convicted of murder in the first degree, "[t]he question on appeal is whether, because of an error by defense counsel, the prosecutor or the judge, or for any other reason, there is a substantial likelihood of a miscarriage of justice unless relief is given. . . . [That] standard of review, including an evaluation of trial counsel's performance, is more favorable to the defendant than the ineffective assistance of counsel test set forth in *Commonwealth* v. *Saferian*, [366 Mass. 89, 96 (1974)]." *Commonwealth* v. *Plant*, 417 Mass. 704, 715-716 (1994).

The defendant asserts that he received ineffective assistance because trial counsel failed to accept the judge's offer to conduct an individual voir dire of the jurors on the issue of racial prejudice.[3] The defendant is black and there was a question as to whether minorities were represented in the jury pool and whether this was an interracial crime.[4] The judge asked the attorneys whether, "out of an abundance of caution," he should conduct an individual voir dire of the jurors. The assistant district attorney stated that, because "a

---

[3]The defendant notes that the jurors were asked whether they were "aware of any bias or prejudice in relation to any of the parties in this case." See G. L. c. 234, § 28 (1992 ed.).

[4]Defense counsel observed that the entire jury pool was white. As he did at the first trial, defense counsel stated that "statistically, I just can't believe that out of this entire county, the odds of being no blacks on a jury pool." The assistant district attorney stated that he saw at least two individuals in the jury pool who could "possibly [be] black." The judge stated that he was "not terribly concerned in this case because, as I understand it, both the alleged victim and the defendant are black. Is that so?" According to the assistant district attorney, the defendant was black and the victim was Cape Verdean. He further stated that he had "no special knowledge . . . whether a Cape Verdean is black or not black." At this time, defense counsel made no statement concerning the race of the defendant or the victim.

certain amount of racial discrimination" exists, he would expect defense counsel to request the jurors to be questioned on their potential racial bias. Defense counsel declined the judge's invitation, stating he was "perfectly willing to accept the jurors' oath that they will impartially and fairly hear the evidence in this case."[5] After the judge reiterated his willingness to conduct an individual voir dire, defense counsel stated he has "no basis upon which to assume that one or more jurors cannot impartially hear this evidence." The defendant posits that "there is no conceivable explanation or excuse for trial counsel's rejection of the judge's offer" to examine the jurors individually.

In our view, defense counsel's failure to request that there be an individual voir dire of the jurors was neither inappropriate nor likely to influence the jury's verdict unfairly. It is important to note that defense counsel was the trial counsel on the first case which ended in a mistrial. The Commonwealth argues that the refusal to seek the individual voir dire was a tactical choice by defense counsel. We agree. Although the defendant contends that trial counsel "had nothing to lose" by accepting the judge's suggestion of an individual voir dire, we have noted that "although a decision to request a voir dire concerning juror racial or ethnic bias undoubtedly raises difficult issues of jury psychology with a potential for counter-productivity, that decision is only one of numerous tactical decisions with a similar potential that the defense may have to make. . . . [N]ot only does a decision *to* request a voir dire present a potential of harm to the defendant, but also the decision *not* to request a voir dire runs a risk that the jury will include bigots" (emphasis in original). *Commonwealth* v. *Ramirez*, 407 Mass. 553, 555-556 (1990).

---

[5]The defendant asserts that the jurors were not sworn until after the voir dire and did not take the oath described by trial counsel. The jurors, however, were asked whether they were aware of any bias or prejudice in relation to any party and were sworn to "try the issues" and render a verdict. We view trial counsel's statement as his belief that the jurors would not be affected by racial bias.

Applying the G. L. c. 278, § 33E, standard, we conclude
that defense counsel's failure to request individual voir dire
on racial bias did not create a substantial likelihood of a mis-
carriage of justice.

3. *Privilege against self-incrimination.* During the presen-
tation of his case, defense counsel called Kevin Hamilton. At
the first trial, Hamilton had testified for the Commonwealth.
At the time of the second trial, Hamilton was twenty-two
years old and had an eleventh grade education. After an-
swering several preliminary questions, he requested to speak
with an attorney. Neither defense counsel nor the district at-
torney objected.

The judge arranged for Hamilton to speak with an attor-
ney employed by the Committee for Public Counsel Services.
After meeting with Hamilton, the attorney reported that
Hamilton was concerned that his testimony could incriminate
him because of his participation in the incident and the po-
tential differences between his earlier testimony and the tes-
timony he expected to provide in the present proceeding. In
the attorney's opinion, Hamilton's concerns were "legiti-
mate" and were not concocted merely as a means to avoid
testifying. The judge noted that Hamilton had never been in-
dicted for his involvement in the events of that night.

The judge conducted a hearing to determine whether
Hamilton's earlier testimony was voluntary, and thus consti-
tuted a waiver of his privilege against self-incrimination.
Hamilton told the judge that, if he had refused to testify at
the first trial, he would have been charged as an accessory to
murder. Hamilton said he did not remember being told that
he had a right not to incriminate himself or that he could
have an attorney appointed to represent him. He contended
that the judge at the first trial did not inform him that he
had a Fifth Amendment privilege. At the conclusion of the
hearing, the judge stated that he would resolve the issue "in
favor of the witness because of his level of education, [and]
because of his ignorance of the right." Thus, the judge found
that, by testifying at the earlier trial, Hamilton had not im-
pliedly waived his privilege against self-incrimination. De-

fense counsel stated that the judge's decision was "entirely correct." At defense counsel's request. Hamilton's prior recorded testimony was read by the court reporter.[6]

The defendant argues that he was prejudiced by the judge's decision allowing Hamilton to claim his Fifth Amendment rights during his testimony, and that Hamilton had waived his privilege because of his earlier testimony and statements to the police. "It has long been the law in Massachusetts that if an ordinary witness, not a party to a cause, voluntarily testifies to a fact of an incriminating nature he waives his privilege [against self-incrimination] as to subsequent questions seeking related facts." *Taylor* v. *Commonwealth*, 369 Mass. 183, 189 (1975). However, the initial testimony, giving rise to the waiver, must be "freely and voluntarily given before a subsequent forfeiture of the privilege can be found." *Id.* at 190. See *Commonwealth* v. *Funches*, 379 Mass. 283, 291 n.10 (1979).

Because an individual's right to be free from self-incrimination is a fundamental principle secured by the Fifth Amendment and by art. 12 of the Massachusetts Declaration of Rights, the privilege is to be liberally construed in favor of the person claiming it. *Commonwealth* v. *Borans*, 388 Mass. 453, 455 (1983), and cases cited. The judge's findings, that Hamilton's testimony was not voluntary because of his level of education, his ignorance of the privilege against self-incrimination, and his reluctance to testify, are entitled to substantial deference. *Commonwealth* v. *Ortiz*, 393 Mass. 523,

---

[6]"The exception to the hearsay rule permits the admission of prior recorded testimony 'where the prior testimony was given by a person, now unavailable, in a proceeding addressed to substantially the same issues as in the current proceeding, with reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant by the party against whom the testimony is now being offered.' " *Commonwealth* v. *Trigones*, 397 Mass. 633, 638 (1986), quoting *Commonwealth* v. *Meech*, 380 Mass. 490, 494 (1981). For purposes of prior recorded testimony, a witness is unavailable if he claims his privilege against self-incrimination and the judge excuses him. *Commonwealth* v. *Canon*, 373 Mass. 494, 499-500 (1977), cert. denied, 435 U.S. 933 (1978). Hamilton testified for the Commonwealth at the first trial. At the second trial, the defense offered that testimony as part of its case.

530 (1984).[7] In view of these findings, we cannot conclude that Hamilton's testimony at the earlier trial was "so freely and voluntarily given as to effect a waiver of his privilege." *Taylor* v. *Commonwealth, supra* at 193.

4. *General Laws c. 278, § 33E.* We have reviewed the entire record pursuant to G. L. c. 278, § 33E, and we conclude that justice does not require us to order a new trial or to reduce the verdict to a lesser degree of guilt.

*Judgment affirmed.*
*Order denying motion for a*
*new trial affirmed.*

---

[7]The judge stated that Hamilton was seventeen years old. He was seventeen years old when he first spoke with the police concerning this incident. However, he was twenty when he testified at the first trial. The record indicates that the judge credited Hamilton's testimony that he was never informed of the privilege.