**Nicholas CIRIGNANO, Petitioner**

v.

**Gary RODEN, in his official capacity as Superintendent, M.C.I. Norfolk, Respondent.**

**Civil Action No. 08–12073–WGY.**

United States District Court, D. Massachusetts.

Feb. 17, 2010.

Nicholas Cirignano, Norfolk, MA, pro se.

Annette C. Benedetto, Department of Attorney General, Boston, MA, for Respondent.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

## I. INTRODUCTION

Petitioner Nicholas Cirignano ("Cirignano"), acting *pro se*, files this petition for a writ of habeas corpus against Gary Roden ("Roden"), Superintendent of the Massachusetts Correctional Institute at Norfolk. *See* Petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus ("Pet'r Mem.") at 1 [Doc. No. 34]. In support of his petition, Cirignano advances two arguments:

1. The Massachusetts Appeals Court unreasonably applied the standard for sufficiency of the evidence articulated by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] (1979); and

2. His conviction was predicated upon an unreasonable determination of the facts in light of the evidence presented.[1]

*Id.* at 12, 16.

Roden opposes Cirignano's petition and requests that this Court deny it. *See* Respondent's Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus ("Resp't Opp'n") at 14 [Doc. No. 30].

### A. Procedural Posture

On August 15, 2001, a Norfolk County grand jury indicted Cirignano on charges

---

1. Though Cirignano sets forth two separate arguments in his memorandum of law, both arguments focus on the application of the *Jackson* standard by the Massachusetts Appeals Court.

of armed assault with intent to murder in violation of Massachusetts General Laws chapter 265, § 18(b); and four counts of assault and battery by means of a dangerous weapon in violation of Massachusetts General Laws chapter 265, § 15A(b).[2] Resp't Opp'n at 2. On August 16, 2001, Cirignano was arraigned on all charges in the Massachusetts Superior Court, sitting in and for the County of Norfolk. *See* Pet'r Mem. at 3. After an eight day trial, a Norfolk County jury returned a verdict convicting Cirignano of armed assault with intent to kill,[3] and one count of assault and battery by means of a dangerous weapon.[4] *See* Pet'r Mem. at 9; Resp't Opp'n at 2.

On February 8, 2005, a justice of the superior court sentenced Cirignano to serve nine to ten years in the state penitentiary on his conviction for assault and battery by means of a dangerous weapon, followed by ten years of probation, from and after his period of incarceration, on his conviction for armed assault with intent to kill. Pet'r Mem. at 9; Resp't Opp'n at 2.

On February 14, 2005, Cirignano filed a notice of appeal with the Massachusetts Appeals Court. *See* Resp't Opp'n at 2. The Appeals Court affirmed his convictions in a Rule 1:28 decision on June 21, 2007. *See* Resp't Opp'n at 2; *see also* Pet'r Mem. at 9. Cirignano then filed an application for leave to obtain further appellate review with the Massachusetts Supreme Judicial Court on July 3, 2007. *See* Resp't Opp'n at 2. The Supreme Judicial Court denied his application on September 11, 2007. *See* Pet'r Mem. at 9; Resp't Opp'n at 2. Cirignano thereafter timely filed the instant petition for a writ of habeas corpus with this Court on December 15, 2008. *See* Petition for Writ of Habeas Corpus [Doc. No. 1].

## B. Facts

The facts underlying Cirignano's convictions have been set out in detail in an opinion by the Massachusetts Appeals Court. *See Commonwealth v. Cirignano*, No. 06–P–109, 69 Mass.App.Ct. 1108, 2007 WL 1791693, at *1–*2 (Mass.App.Ct. June 21, 2007). "The factual findings of [a] state court are presumed to be correct under 28 U.S.C. § 2254(e)(1)." *Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir.2002); *see Sanna v. Dipaolo*, 265 F.3d 1, 7 (1st Cir.2001).

In the early evening hours of July 3, 2001, a crowd of people gathered at the seawall on Wessagusset Beach in Weymouth, Massachusetts to watch a fireworks display. *Cirignano*, 2007 WL 1791693, at *1. Cirignano arrived in this area with a group of people between 6:00 and 7:00 p.m. and was in possession of a sheath knife. *Id.* At some point during or after the fireworks display, a group of people near the seawall became involved in a physical altercation. *Id.* During the altercation, the victim Matthew Nagle ("Nagle") pulled one person away from the fight and began verbally arguing with another. *Id.* At the same time, another physical altercation began at a nearby location on Caldwell Street. *Id.* Everybody at the seawall, including Nagle, ran over to the altercation on Caldwell Street. *Id.*

---

**2.** Each of the four counts charging Cirignano with assault and battery by means of a dangerous weapon relate to separate victims. *See* Resp't Opp'n at 2.

**3.** Assault with intent to kill is a lesser included offense of assault with intent to murder. *See* Pet'r Mem. at 9 n. 4; Resp't Opp'n at 2.

**4.** Cirignano was acquitted of all the other charges. *See* Pet'r Mem. at 9 n. 4; Resp't Opp'n at 2.

Between eight and fifteen people were observed taking part in the physical altercation on Caldwell Street. *Id.* During the altercation, Cirignano raised a six-inch knife with gold trim and a wooden handle against a witness, who then struck Cirignano. *Id.* At trial, a percipient witness testified that she observed a man fighting with several other people and wielding a knife that fit the description of Cirignano's knife.[5] *Id.* Another percipient witness testified that she observed Cirignano swinging his arm in a "hacking" motion. *Id.* There was no evidence presented at trial that any person other than Cirignano was in possession of a knife during the altercations.[6] *Id.*

During the altercation on Caldwell Street, Nagle received a stab wound to the neck. *Id.* "[A]n individual fitting [Cirignano's] description was seen standing over" Nagle before fleeing from the scene. *Id.* The stab wound to Nagle's neck was three centimeters in length and penetrated deep enough to sever his spinal cord, rendering Nagle paralyzed. *Id.*

After conducting a search of the scene, officers found and seized a sheath knife, as well as a knife coated in blood. *Id.* The blood on the knife was tested and proved to match the DNA profiles of both Nagle and Cirignano. *Id.*

The following day, after learning that the authorities were searching for him, Cirignano and his girlfriend drove to New Hampshire. *Id.* at *2. A friend of Cirignano's girlfriend rented a hotel room for the couple where they spent the day. *Id.* During the day, Cirignano remained in the hotel room while his girlfriend went to a local convenience store to purchase finger-

nail clippers, a file, rubbing alcohol, and a sponge. *Id.* Upon her return to the hotel room, "she attempted to remove debris from underneath [Cirignano's] fingernails using her purchases." *Id.* Several hours later, Cirignano proceeded to a local police station in New Hampshire and turned himself in. *Id.* He was thereafter transported back to Massachusetts and indicted for his involvement in the incident. *Id.*

### C. Federal Jurisdiction

This Court may exercise jurisdiction over Cirignano's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## II. ANALYSIS

### A. Standard for Granting Federal Habeas Relief

This Court is permitted to review Cirignano's state court convictions "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The scope of this Court's review of Cirignano's petition must be "both limited and highly deferential" to the state court judgments. *Evans v. Thompson*, 465 F.Supp.2d 62, 66 (D.Mass.2006), *aff'd*, 518 F.3d 1 (1st Cir. 2008).

There is no dispute that Cirignano has exhausted all available state court remedies. This Court is thus permitted to grant his petition for a writ of habeas corpus only if it finds that the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court[,]" or a "decision that was

---

5. At trial, the witness identified Cirignano's knife as the one she saw the man holding. *Cirignano,* 2007 WL 1791693, at *1.

6. It should be noted, however, that a participant in the altercation testified at trial that he was in possession of a small pocket knife on the day in question but never took it out or used it. *Id.* n. 3.

based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

■ The Supreme Court has emphasized that "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief. *See Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In order for a state court's decision to be "contrary to" clearly established federal law, the decision must be "substantially different" from the relevant Supreme Court precedent. *Id.* "The word 'contrary' is commonly understood to mean 'diametrically different' ... or 'mutually opposed.'" *Id.* Essentially, a state court decision is "contrary to" Supreme Court precedent if it contradicts that decision or reaches a different result on facts that are materially indistinguishable. *Id.*

■ In assessing whether a state court decision involves "an unreasonable application of ... clearly established" federal law, 28 U.S.C. § 2254(d), the focus is on "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409, 120 S.Ct. 1495. A federal habeas court is permitted to grant habeas relief under the "unreasonable application" prong "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[7] *Id.* at 365, 120 S.Ct. 1495.

■ Lastly, the phrase "clearly established Federal law ... refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412–13, 120 S.Ct. 1495.

■ In sum, habeas relief is not warranted if the state court's decision was merely erroneous or incorrect; it must be "objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 24, 27, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

### B. Sufficiency of the Evidence

"A challenge to the sufficiency of the evidence [to support a finding of guilt] is governed by the constitutional standard set forth in *Jackson [v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ]." *Pimental v. Spencer*, 305 Fed. Appx. 672, 674 (1st Cir.2009). In *Jackson*, the Supreme Court explained that in evaluating sufficiency of the evidence claims, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. In making this determination, "the inquiry is not whether the Appeals Court was correct in finding the evidence ... sufficient to support a conviction beyond a reasonable doubt, but rather whether its judgment amounted to a decision that unreasonably applied *Jackson*." *Pimental*, 305 Fed.Appx. at 674 (quoting *Pimental v. Spencer*, No. 07–10122–RWZ, 2008 WL 2066967, at *3 (D.Mass. April 30, 2008) (Zobel, D.J.)).

Practically speaking, petitioners seeking federal habeas relief based upon a challenge to the sufficiency of the evidence to support a jury's verdict "face[ ] a heavy burden." *Pimental*, 305 Fed.Appx. at 674

---

7. The Supreme Court has stressed that, under the "unreasonable application" prong, "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. 1495 (emphasis in original).

(quotations omitted). Specifically, the First Circuit has explained that:

> [F]ederal courts should be particularly cautious about issuing habeas [petitions], on grounds of the objective unreasonableness of a state court's conclusion that the evidence is sufficient, where there has been a verdict of guilt by a jury of a defendant's peers, where the defendant's credibility was evaluated by the jury hearing his testimony, where that verdict has been affirmed on appeal in the state system, and where there is no claim of constitutional error in the conduct of the trial.

*Hurtado v. Tucker,* 245 F.3d 7, 19–20 (1st Cir.2001); *but see O'Laughlin v. O'Brien,* 568 F.3d 287 (1st Cir.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 1142, —— L.Ed.2d —— (2010) (granting prisoner's habeas petition because evidence presented at trial was legally insufficient to establish prisoner's guilt beyond a reasonable doubt, and state court unreasonably applied federal law in holding to the contrary).

### 1. Justification on the Basis of Self–Defense

■ The crux of Cirignano's habeas petition is that the Massachusetts Appeals Court erred in applying *Jackson* because, based upon the evidence presented at trial, any reasonable jury had to recognize that Cirignano acted in justifiable self-defense. *See* Pet'r Mem. at 12–18.

■■ In the Commonwealth of Massachusetts, to justify the use of deadly force in self-defense the defendant bears the burden of going forward to introduce some evidence showing that: (1) "the victim ... committed some overt act against the defendant";[8] (2) the defendant believed that he was in danger of death or serious bodily harm;[9] (3) the defendant's belief was reasonable;[10] (4) the defendant took every opportunity to avoid combat;[11] and (5) the defendant "used no more force than was reasonably necessary in all the circumstances of the case."[12] Once the issue of self-defense is properly raised, the Commonwealth must prove beyond a reasonable doubt either: (1) that the defendant did not act in self-defense; or (2) that the force used by the defendant was excessive. *See Commonwealth v. Koonce,* 418 Mass. 367, 370, 636 N.E.2d 1305 (1994).[13]

Under Massachusetts law, deadly force is defined as force that is intended to or will likely cause death or great bodily harm. *See Commonwealth v. Cataldo,* 423 Mass. 318, 321, 668 N.E.2d 762 (1996). The courts of the Commonwealth have held that a jury can infer from the size of a knife that it was a deadly weapon. *See Commonwealth v. Reed,* 427 Mass. 100, 104, 691 N.E.2d 560 (1998) (holding that "a knife ... is a deadly weapon"). Moreover, the use of deadly force may be inferred from the manner in which a weapon was used. *See, e.g., Commonwealth v. Kendrick,* 351 Mass. 203, 208–09, 218 N.E.2d

---

8. *Commonwealth v. Pike,* 428 Mass. 393, 396, 701 N.E.2d 951 (1998).

9. *Commonwealth v. Albert,* 391 Mass. 853, 861, 466 N.E.2d 78 (1984).

10. *Id.*

11. *Commonwealth v. Lacasse,* 365 Mass. 271, 273, 310 N.E.2d 605 (1974).

12. *Commonwealth v. Harrington,* 379 Mass. 446, 450, 399 N.E.2d 475 (1980).

13. This case does not involve the development of the Massachusetts common law with respect to the implications to be derived from an alleged victim's knowledge of the reputation of the defendant. *See, e.g., Commonwealth v. Adjutant,* 443 Mass. 649, 664, 824 N.E.2d 1 (2005); *Commonwealth v. Sok,* 439 Mass. 428, 434–35, 788 N.E.2d 941 (2003).

408 (1966) (holding that evidence of wounds inflicted by a "plunging force" was sufficient to support a finding of deadly force).

At Cirignano's trial, the Commonwealth presented evidence that he was in possession of a sheath knife, and that witnesses observed him swinging his arm in a "hacking" motion. *See Cirignano*, 2007 WL 1791693, at *3. Additionally, the evidence proved that Nagle sustained a stab wound that "penetrat[ed] a vital area." *Id.* (quotations omitted). In resolving the issue of whether Cirignano used deadly force in self-defense, the Massachusetts Appeals Court concluded that the evidence presented was sufficient to support a rational jury finding that Cirignano "employed deadly force against [Nagle] and do[es] not support a finding that nondeadly force was used." *Cirignano*, 2007 WL 1791693, at *3. In light of the evidence presented at trial, the Appeals Court's conclusion was not objectively unreasonable. Indeed, the Appeals Court correctly applied the *Jackson* standard because the Commonwealth's evidence was more than adequate to support a finding that Cirignano's use of a sheath knife constituted deadly force under Massachusetts law.

In its brief, the Commonwealth concedes that, at trial, it failed to counter Cirignano's assertion "that he had a reasonable belief of imminent danger of serious bodily harm and [that] physical force was necessary." Resp't Opp'n at 12. As the Commonwealth correctly notes, however, the jury's verdict necessarily indicates that the Commonwealth did prove that Cirignano used excessive force in defending himself. *Id.*

In its opinion, the Appeals Court held that the trial record was sufficient to support a rational jury finding that Cirignano used excessive force in self-defense. *See Cirignano*, 2007 WL 1791693, at *3. On this issue, the Appeals Court explained that a necessary predicate to the use of deadly force in self-defense is "that the victim first commit[ ] an overt act against the defendant." *Id.* (footnote omitted). Because the record revealed no evidence that Nagle committed *any* overt act against Cirignano, the Appeals Court concluded that the jury's determination that Cirignano used excessive force in self-defense had sufficient evidentiary support.

The Appeals Court's resolution of this issue was not an unreasonable application of the *Jackson* standard. Massachusetts law requires that a victim commit an overt act against a defendant before the use of deadly force in self-defense can be justified. *See Pike*, 428 Mass. at 396, 701 N.E.2d 951. Because the record is devoid of any evidence that Nagle committed an overt act against Cirignano, the Appeals Court's application of *Jackson* was not objectively unreasonable.

## III. CONCLUSION

The evidence adduced at trial was more than sufficient to support a rational jury in finding both that Cirignano used deadly force, and that his use of such force was excessive. Thus, the Massachusetts Appeals Court was not objectively unreasonable in applying the *Jackson* standard in affirming Cirignano's convictions. Accordingly, this Court must, and hereby does, DENY Cirignano's petition for a writ of habeas corpus.

SO ORDERED.