COMMONWEALTH vs. RAWLINSON ALVES. No. 92-P-1237. December 21, 1993. *Evidence*, Admissions and confessions. *Constitutional Law*, Admissions and confessions, Waiver of constitutional rights, Assistance of counsel. *Waiver*. *Practice, Criminal*, Voluntariness of statement, Instructions to jury, Argument by prosecutor. *Homicide. Malice. Intent.*

An Essex County jury found the defendant guilty of murder in the second degree. The jury were warranted in concluding that on August 13, 1989, the defendant stabbed his girlfriend in the left side with a knife, causing her death. In the early hours of the following day, the defendant gave inculpatory statements to Peabody police officers concerning the events of the previous day. We affirm the judgment.

1. *Motion to suppress.* The defendant, who had recently emigrated from Brazil and who spoke only Portuguese, claims that his foreign background, the language barrier, and his unfamiliarity with the American legal system prevented a voluntary, knowing and intelligent waiver of his Miranda rights. After a full suppression hearing, the judge, who wrote a detailed and careful memorandum of eleven pages, concluded, in his ultimate findings, (i) that the defendant "fully understood the meaning of the rights he was giving up despite minor errors appearing in the text of the printed Portuguese *Miranda* card," (ii) "that the defendant's emotional upheaval did not preclude him from making a knowing and intelligent waiver of his rights and that his statements were voluntarily made as a product of a free will and rational intellect," and (iii) that the defendant's claim that the police were required to provide an independent and neutral interpreter had no merit "since the use of a bilingual police officer did not prejudice the defendant in any way."

"In reviewing the judge's ruling on a motion to suppress, we accept the motion judge's subsidiary findings unless there is clear error. We give substantial deference to the judge's ultimate findings. . . . We do, however, review the judge's application of constitutional principles to the facts." *Commonwealth* v. *Colon-Cruz*, 408 Mass 533, 538-539 (1990) (citations omitted).

There was no clear error in the judge's subsidiary findings from which he drew his conclusions. There was ample evidence to support the findings

that the warnings were read to the defendant on two separate occasions. The first time was at the defendant's booking, when Officer Santos, who spoke Portuguese fluently, read the warnings by translating an English version to Portuguese, following which the defendant read aloud the warnings written in Portuguese from a sheet given to him by Officer Santos. This process was repeated before a State police trooper prior to the questioning of the defendant. After each recitation of the warnings, the defendant was asked if he understood his rights; he replied that he did. Following the warnings just described, the defendant wrote the following statement: "I, Rawlinson Alves, understand perfectly the rights that have been read to me in this sheet."

With respect to the defendant's claim that the language differences, the defendant's general unfamiliarity with the American criminal justice system, and his emotional state at the time of the questioning precluded an understanding of his Miranda rights, the judge found that Officer Santos's testimony concerning the translation of the English Miranda warnings was "fully credible," and that the defendant answered all the questions put to him by Santos and Trooper Lynch in a responsive, coherent and rational manner. The defendant did not halt the booking process nor did he interrupt the subsequent interrogation to complain that he could not understand Officer Santos. The judge concluded that the Commonwealth had sustained its burden of proving the defendant's waiver of his Miranda rights. There was sufficient evidence to support these findings.

As to the claim that the errors in the written Portuguese Miranda card impaired the defendant's understanding of the rights stated thereon, the judge's subsidiary findings were supported by the evidence. The judge found that there were minor errors in the "spelling, choice of word, verb tense and punctuation" in the written Portuguese Miranda card. He also found that the word "right" was not explicit in line four which intended to convey the right to speak to an attorney and to have an attorney present during questioning, but that line six accurately described the right to cut off questioning at any time and consult an attorney, and line eight accurately asked if the person was willing to talk "without an attorney present." On that basis, the judge reasonably concluded "that the overall Portuguese text adequately describes the role of an attorney and that, as a result, the defendant understood the intended meaning of *Miranda* despite the missing word in line 4."

Regarding the claim that the defendant's emotional state precluded his understanding of the Miranda warnings, the judge found, inter alia, "that the defendant was very composed during the booking process and the subsequent questioning. It was not until the end of the questioning that he became upset and started to cry profusely as he learned of his girlfriend's death. . . . In fact, no substantive information was obtained from the defendant after he learned his girlfriend was dead. . . ." From these find-

35 Mass. App. Ct.    937

Rescript Opinions.

ings, all supported by the evidence, the judge concluded that "the defend-
ant Alves was alert enough to realize the rights he was giving up."

Finally, the judge rejected the claim that the defendant's statements
should be excluded simply because Officer Santos acted as his interpreter.
We know of no authority, and the defendant cites none, which would re-
quire police to produce an independent interpreter when questioning a non-
English speaking defendant prior to trial. Contrast G. L. c. 221, § 92A (a
deaf or hearing-impaired person entitled to an interpreter before question-
ing). There was no error in the denial of the defendant's suppression
motion.[1]

2. *Instructions on malice.* We have reviewed the judge's charge as a
whole (to which the defendant did not object). See *Commonwealth* v. *Al-
bert*, 391 Mass. 853, 857-858 (1984). While a charge to the jury which
instructs that malice is to be presumed conclusively from the fact that
there was a killing should not be given, see *Commonwealth* v. *Doherty*,
411 Mass. 95, 100-101 (1991), the instruction the judge gave in this case
was entirely different, and it was consistent with the holding in *Doherty*.
The judge said nothing more than that an intentional killing without justi-
fication or excuse is an unlawful killing with malice aforethought, and is
murder. See *Id.* at 100.

3. *Prosecutor's closing argument.*[2] There was no objection to the prose-
cutor's remarks, and the objections now made are not, as a matter of right,
entitled to appellate review. See *Commonwealth* v. *LaFontaine*, 32 Mass.
App. Ct. 529, 537 (1992). We have reviewed the prosecutor's remarks and
conclude that they did not create a substantial risk of miscarriage of jus-
tice. The prosecutor stayed within the evidence and inferences therefrom,
fairly meeting the arguments of defense counsel. His reference to the de-
fendant's alleged illegal entry into this country was supported by the de-
fendant's testimony on direct examination that, as he crossed the border
into the United States, "I was caught by the Immigration Service . . .
[and] went to the immigration court, and then I had a bail of three thou-
sand dollars." Those circumstances, which the defendant himself offered
up, were arguably relevant — or so the defendant must have thought — in
describing the background of the relationship between the defendant and
the victim. It was not, as the defendant claims, an appeal to racial
prejudice.

We have reviewed the remaining claims of error in the prosecutor's final
argument, and we conclude that there were no improper remarks or argu-

---

[1]The defendant also argues that the trial judge erred in denying his motion in
limine with regard to Officer Santos's qualifications to testify concerning the trans-
lations from English to Portuguese. The judge, who allowed the testimony, acted
well within the range of his discretion, and there was no error.

[2]The last section of this opinion is in response to the defendant's pro se supple-
mental brief.

ments. We find no vouching for prosecution witnesses. The claim that counsel was ineffective because he failed to object to the judge's instructions and to the prosecutor's final argument has no merit, for the reasons stated above.

*Judgment affirmed.*

*Jeffrey L. Baler* for the defendant.

*Lila Heideman*, Special Assistant District Attorney, for the Commonwealth.