## COMMONWEALTH *vs.* DOMINGO S. ARDON.

Middlesex. October 6, 1998. - December 11, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, & MARSHALL, JJ.

*Practice, Criminal,* Voluntariness of statement, Interpreter, Capital case. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Evidence,* Admissions and confessions, Voluntariness of statement.

This court declined to impose a rule requiring electronic recording of interrogations of suspects conducted at police stations [498-499] and declined to mandate that non-English speaking suspects be provided with independent interpreters [499-500].

No reason appeared on the record of a murder case to warrant this court's exercise of its power under G. L. c. 278, § 33E, to reduce the conviction to manslaughter. [500-501]

INDICTMENT found and returned in the Superior Court Department on March 17, 1995.

A pretrial motion to suppress evidence was heard by *Elizabeth J. Dolan,* J., and the case was tried before *Paul A. Chernoff,* J.

*Charles K. Stephenson* for the defendant.

*Geraldine C. Griffin,* Assistant District Attorney (*Michael Fabbri,* Assistant District Attorney, with her) for the Commonwealth.

LYNCH, J. The defendant appeals from his conviction of murder in the first degree on the basis of extreme atrocity or cruelty. He claims that there was an inadequate basis for finding his inculpatory statements to police voluntary because they were not electronically recorded. He also requests that we adopt a new rule requiring the right to the assistance of an independent interpreter during custodial interrogations for those suspects unable to communicate in English. The defendant further urges that we exercise our plenary power pursuant to G. L. c. 278, § 33E, and reduce his conviction to manslaughter. For the reasons set forth below, we affirm the conviction and decline to exercise our power under G. L. c. 278, § 33E.

1. *Facts.* The jury were warranted in finding the following

facts. On February 18, 1995, the defendant gave the victim and her friend a ride. After the defendant drove the friend to her destination, he and the victim proceeded to the defendant's apartment, where the two drank alcohol and had voluntary sexual intercourse. At some point the victim asked the defendant to drive her to Marlborough, but instead he drove her to Weston Nurseries in Hopkinton. While there the parties argued and ultimately the defendant attacked the victim with an "x-acto" knife, resulting in over thirty knife wounds to her body, including six wounds to her neck severing her arteries and jugular veins.

2. *The defendant's statements.* At a suppression hearing, the motion judge found the following facts. On February 22, 1995, the body of the victim was found by an employee of Weston Nurseries. State Trooper Owen Boyle, Sergeant James Connolly, and Detective Kenneth Ferguson of the Framingham police department conducted the resulting investigation. On February 23, 1995, the defendant went to the police station as a result of a message apparently being left on his answering machine by the friend of the victim, who had been in the defendant's automobile on February 18, 1995. It is clear that the victim's friend was not an agent of the police or acting on their behalf because at the time she left the message they had not spoken to her. Officer Eduardo Rivera, who first spoke with the defendant at the police station, had no knowledge of the investigation and consequently sent a radio message asking whether anyone wanted to question the defendant.

While at the station the defendant's demeanor was quiet and he was not visibly under the influence of drugs or alcohol. After the defendant waited approximately forty-five minutes, Detective Ferguson, Trooper Boyle, and Sergeant Connolly arrived. Officer Rivera, who spoke fluent Spanish, served as the interpreter.

At the outset the interview was objectively noncustodial and noncoercive. The defendant admitted that he was told that he was free to leave at any time. The defendant was given a written form containing Miranda warnings in Spanish. Officer Rivera then read the form in Spanish aloud to the defendant. He acknowledged that he understood his rights, and subsequently signed the Miranda form. The defendant gave several versions of what occurred that night, implicating him in the victim's murder.

3. *Motion to suppress statements.* On appeal, the defendant concedes that the judge's denial of his motion to suppress was proper based on the evidence.[1] Nevertheless, the defendant challenges the voluntariness of his waiver of his Miranda rights on the basis that his inculpatory statements were not electronically recorded and that he was not provided with an independent interpreter. Consequently, he requests that we impose a new rule requiring electronic recording of interrogations conducted at the police station and mandate that all non-English speaking suspects have the right to an independent interpreter during custodial interrogations. For the following reasons, we decline to do so.

(a) *Electronic recording.* We have addressed the issue of electronic recording of custodial interrogation on other occasions and have refused to require such recording as a matter of constitutional or common law. See *Commonwealth* v. *Diaz,* 422 Mass. 269, 273 (1996); *Commonwealth* v. *Fryar,* 414 Mass. 732, 742 n.8 (1993), *S.C.,* 425 Mass. 237, cert. denied, 522 U.S. 1033 (1997). Even though "we have suggested that at some time, such a requirement may become appropriate[, *Commonwealth* v.] *Diaz, supra* at 272-273," we have stated that, if we did impose such a rule, we would not make it retroactive. *Commonwealth* v. *Fernandes,* 427 Mass. 90, 98 & n.3 (1998).

In *Commonwealth* v. *Diaz, supra* at 273, we discussed the subject at length and pointed out that:

"[D]efense counsel is entitled to pursue the failure of the police to record a defendant's statements. Counsel may, for example, inquire of a testifying police officer, as happened here, whether he or she was aware of the availability of recorders to use during the questioning of ' suspects. Counsel may argue to a jury and to a judge as factfinder that the failure of the police to record electronically statements made in a place of custody should be considered in deciding the voluntariness of any statement, whether the defendant was properly advised of his rights,

---

[1]The judge's findings were warranted by the evidence. See *Commonwealth* v. *Mandile,* 397 Mass. 410, 412 (1986); *Commonwealth* v. *Benoit,* 389 Mass. 411, 419 (1983). She found that the interview was objectively noncustodial and noncoercive, that the defendant was read the Miranda form and made a valid waiver of his rights, and concluded that in the totality of all the circumstances of the interview "the defendant's statements were made knowingly and voluntarily."

and whether any statement attributed to the defendant was made."

The defendant clearly availed himself of this right. We decline to go beyond our prior pronouncements on the subject.

(b) *Independent interpreter.* The defendant recognizes that no authority exists in Massachusetts for providing a non-English speaking person the right to an independent interpreter. See *Commonwealth* v. *Alves*, 35 Mass. App. Ct. 935, 937 (1993).[2] Further, he does not argue that the translation was flawed or that the police officer was biased in this particular case.[3] Nevertheless, he suggests that police officers who additionally serve as interpreters are inherently biased. In support of this contention, the defendant merely asserts that other State Legislatures have enacted statutes providing independent interpreters for non-English speaking suspects during interrogation,[4] and compares several Massachusetts legislative statutes which provide the right to interpreters in entirely different contexts.[5]

It should be kept in mind that the procedural safeguards

---

[2]The Appeals Court rejected the argument that "statements should be excluded simply because [a bilingual police officer] acted as his interpreter. We know of no authority, and the defendant cites none, which would require police to produce an independent interpreter when questioning a non-English speaking defendant prior to trial." *Commonwealth* v. *Alves*, 35 Mass. App. Ct. 935, 937 (1993).

[3]We agree with the Commonwealth's argument that there is no adequate basis to challenge the competency of the police officer in this case, where he spoke Spanish fluently and had no prior involvement in the investigation of the victim's death. Moreover, the defendant testified during the motion hearing that he had no difficulty understanding Officer Rivera. He testified that he can read Spanish. He further acknowledged that he was able to read the Miranda forms and understood the officer's translation of them. The record amply supports the judge's conclusions that the defendant's waiver of his Miranda rights was voluntary. See *Commonwealth* v. *Mello*, 420 Mass. 375, 384 (1995); *Commonwealth* v. *Mandile*, *supra* at 412.

[4]See D.C. Code Ann. § 31-2702(e) (1993); Kan. Stat. Ann. § 75-4351(e) (1997); Minn. Stat. Ann. §§ 611.31-611.33 (1987 & Supp. 1998).

[5]The defendant suggests that a rule requiring the right to an independent interpreter for non-English speaking suspects is analogous to the legislative enactment of G. L. c. 221, § 92A (providing, in part, that absent written waiver shown to be knowing and voluntary, no statement against hearing or speech impaired person's self-interest is admissible unless obtained through a qualified interpreter). The defendant also places undue significance on G. L. c. 221C, § 2 (providing, in part, non-English speaker right to qualified or certified interpreter throughout legal proceeding), contending that there is no

already exist to protect a defendant in these circumstances. The Commonwealth has the burden of establishing a knowing, voluntary, and intelligent waiver of Miranda rights. See *Commonwealth* v. *Magee*, 423 Mass. 381, 386 (1996). The defendant also has the opportunity to discredit the translation or credibility of the interpreter in order to demonstrate the lack of a voluntary and intelligent waiver. See *Commonwealth* v. *Edwards*, 420 Mass. 666, 670 (1995); *Commonwealth* v. *Mandile, supra* at 413.

Furthermore, we note the pragmatic difficulties in implementing such a rule. It would be an impossible burden to require that every police department have readily available independent interpreters for every non-English speaking suspect. Such a procedure would be prohibitively expensive, time consuming, and fraught with administrative problems. It would also work to the detriment of many people whom the police wished to interview by increasing the time they would be required to wait while the police obtained the required interpreter. We conclude that suspects' rights are adequately protected by the rule requiring the Commonwealth to prove a voluntary and intelligent waiver of Miranda rights. See *Commonwealth* v. *Edwards, supra* at 670; *Commonwealth* v. *Mandile, supra* at 413, and cases cited.

4. *General Laws c. 278, § 33E.* Finally, the defendant requests, pursuant to our plenary power under G. L. c. 278, § 33E, that we reduce the conviction from murder in the first degree on the basis of extreme atrocity or cruelty to manslaughter. He concedes that there was sufficient evidence for a jury to find him guilty of murder in the first degree. However, he argues that manslaughter is more appropriate based on his contentions that he was intoxicated and was acting out of provocation. The jury could have reasonably found the defendant's assertions not credible. Furthermore, the evidence showed that the victim was repeatedly beaten and stabbed thirty times. The defendant slashed her across the throat, at least six times, cutting through to her spine. The undisputed brutality of this attack confirms the appropriateness of a conviction of murder in the first degree.

Accordingly, after having reviewed the entire record we conclude that the verdict was consonant with justice. As a result,

legitimate distinction for denying this right to custodial interrogations. We disagree.

we decline to exercise our power pursuant to G. L. c. 278, § 33E, to reduce the conviction to manslaughter.

*Judgment affirmed.*