Quinlan, Regina L., J.
The defendant, Alexander Pring-Wilson, was charged in the above-numbered indictment with Murder in the First Degree. The indictment resulted from an incident in the early morning hours of April 12, 2003 on Western Avenue, Cambridge involving the defendant, Michael Colono and Samuel Rodriguez which culminated in the death of Michael Colono. The defendant did not know either Michael Colono or his cousin Samuel Rodriguez. During the incident, the defendant stabbed and caused the death of Michael Colono.
The critical issue in dispute at trial was whether the defendant was the aggressor or whether he was acting in self-defense. Trial commenced on September 13, 2004. Juiy deliberations began on October 7, 2004. Thereafter, on October 14, 2004, the juiy returned a verdict finding the defendant guilty of the lesser included offense of voluntary manslaughter. On October 25, 2004, the defendant filed a timely Notice Appeal.
On March 14, 2005, while the record in this case was being assembled, the Supreme Judicial Court announced its decision in Commonwealth v. Adjutant, *625 443 Mass. 649 (2005). Adjutant appealed her conviction of voluntary manslaughter asserting inter ailia that evidence of the victim’s “past conduct, even though ‘unknown to her at the time of the killing, should have been admitted at her trial because it was relevant to her claim that [the victim] was the ‘first aggressor’ in the altercation that resulted in his death, and that she acted in self-defense.” In its decision, the Court held that “where the identity of the first aggressor is in dispute and the victim has a histoiy of violence, we hold that the trial judge has the discretion to admit evidence of specific acts of prior violent conduct that the victim is reasonably alleged to have initiated, to support the defendant’s claim of self-defense.” Id., 664. In Adjutant, the Court concluded by saying,
This opinion adopts a new common-law rule of evidence. Because the defendant alleged the error and argued for the rule on direct appeal, she should have the benefit of this decision. Otherwise, it shall apply only prospectively. Commonwealth v. Dagley, 442 Mass. 713, 721 n. 10 (2004).
On April 11, 2005, in response to the court’s sua sponte order,[1] the defendant filed a Motion for Relief from Judgment Pursuant to Mass.R.Crim.P. 25(b)(2). In his motion, he relied upon Adjutant as well as the court’s discretion pursuant to Rule 25(b)(2). By his motion, the defendant seeks to have the court set aside the verdict and to order a new trial “on the grounds that the Commonwealth’s evidence lacked integrity, the jury was deprived of crucial evidence and the verdict was not consonant with justice.” The Commonwealth opposes the defendant’s motion on the grounds that Adjutant does not apply retroactively to the defendant.
For the reasons set forth below, the defendant’s conviction is vacated, and the defendant’s Motion for Relief from Judgment Pursuant to Mass.R.Crim.P. 25(b)(2) is ALLOWED.

BACKGROUND

In the early morning hours of April 12, 2003, a series of coincidences converged resulting in the defendant’s encounter with the victim, Michael Colono and his cousin, Samuel Rodriguez. The initial facts are not in dispute. The defendant had spent the evening with friends at various clubs in the Cambridge area, ending at the Western Front on Western Avenue near Memorial Drive. During the evening the defendant had been drinking. After seeing his friends off in a cab, he began to walk to his home in Somerville via Western Avenue. The defendant passed the Pizza Ring shop where a car containing Michael Colono, Samuel Rodriguez and his girlfriend Giselle Abreu was parked outside. They were parked outside the Pizza Ring while waiting for their pizza order. Both Michael Colono and Samuel Rodriguez also had been drinking. As the defendant walked passed the car, he was talking on his cell phone. Michael Colono saw the defendant and made a comment to or about him.
What followed — and ultimately resulted in the death of Michael Colono — was strongly contested. According to the Commonwealth’s opening, after Michael Colono’s comment:
The defendant at that time stopped, ended his cell phone call, and put his cell phone away. At that time, he had his Spyderco military folding knife ready, and he walked back to the car. He walked to the back, driver’s side window next to Mr. Colono, “Did you say something to me?” And Mr. Colono replied to the effect,
“Yeah, You’re shitfaced. Do you want to do something about it?”
And Mr. Pring-Wilson from outside the car said, “Yeah.” And as he did so, he opened Michael Colono’s door. At that point, Michael Colono was not waiting for the defendant’s next move, and he jumped out of the car with fists ready for a fistfight. But it was much more than a fist fight because the defendant had a knife. It was a large knife. He had it ready, and he used it. [Tr. IV 23-25.)
Defense counsel had a very different version of what followed the comment.
He [the defendant] tries to walk away and a man explodes out. Fist flying. The suddenness and ferocity of the attack surprises Alex. It drives Alex back into a dark driveway. Suddenly there are two of them. He is pulled to the ground. He is forced down to the ground by the blows that are hitting him on the top, and on the side, and on the back of his head.
When he is on the ground, the beating is unrelenting, and they are kicking at him in addition to hitting him on the top, the back, and the side of the head. He thinks to himself when is it going to stop? How is it going to stop? Who is going to stop it?
Every time he is hit his brain explodes like a slow-motion strobe light. .. His head is facing down. He is on his knees. When is the beating going to stop? How is it going to stop? Who is going to stop it? He thinks to himself, my knife, my knife. He takes out the knife with one hand over his head, he flails away, an escape out of this, and he is able to get off the ground, get onto his feet and back away. [Tr. IV 49-50.]
During trial, the only eyewitnesses were Samuel Rodriguez and his girlfriend Giselle Abreu, and the defendant who testified. Rodriguez testified that he, Michael Colono and Giselle Abreu were sitting parked on Western Avenue waiting for their pizza order. He testified to seeing the defendant pass by their car as he was walking on Western Avenue and speaking on his cell phone. Michael Colono made a comment concerning the defendant’s sobriety (or lack thereof) and, according to Rodriguez, the defendant ended his *626 phone call, put the phone in his pocket, walked to the rear passenger side window and asked Michael Colono if he had said something to him. According to Rodriguez, Colono said “Yeah. You want to do something about it?” or words to that effect. According to Rodriguez, the defendant opened the car door,[2] Michael Colono jumped out, and he and the defendant immediately began to fight. Rodriguez testified that the defendant got the upper hand immediately. Rodriguez joined and ended the affray. At some point, the defendant had taken out a knife. Rodriguez said that Colono warned him the defendant had a knife. When the fighting ended, the defendant took out his cell phone and Rodriguez and Michael Colono got back into the car and they left the area. Neither Michael Colono nor Rodriguez realized that Michael Colono had been stabbed until they reached the Trader Joe’s parking lot off Memorial Drive.
The defendant’s version differed in that he testified to going over to the car and asking Michael Colono if he had said something to him. According to the defendant, Michael Colono opened the car door, jumped out and began to fight. He was soon joined by Rodriguez. The defendant testified that both men had him on the ground and he took his knife out of his pocket to defend himself from their punches and kicks, particularly kicks directed at his head.
On September 8, 2004, prior to trial, the Commonwealth argued its pre-trial Motion in Limine seeking to preclude the defendant from offering evidence of prior bad acts of the victim and/or witnesses, particularly Samuel Rodriguez. The motion addressed inter alia prior criminal histories or convictions of Michael Col-ono and of Samuel Rodriguez. According to the Commonwealth, forty-two of those witnesses were people who had arrested either Michael Colono or Samuel Rodriguez, or witnessed the underlying events leading to those arrests and convictions. For example, Det. Fulkerson was expected to be called to give information relating to Michael Colono’s arrest on September 15, 2001 for unlawful possession of a Class B Controlled Substance with intent to distribute and malicious destruction of property.[3] In seeking to preclude such evidence, the Commonwealth noted that the prior bad acts of Colono were not known to the defendant on the date of this offense and, therefore, were not relevant or admissible in this case. [Tr. 9/8/04 p. 110.] The same objection was applied to the witness Rodriguez who had a more extensive criminal record.[4]
In responding to the Commonwealth’s motion, the defense counsel said “we absolutely, completely understand that we are not going to offer evidence of bad acts ... We understand the propensity case law in the Commonwealth, and we are completely aware of it, and we aren’t going to do it.” [Tr. 9/8/04 p. 119.] However, the defense sought to introduce the prior convictions for impeachment purposes not only to challenge the credibility of Samuel Rodriguez’s trial testimony, but also to challenge the credibility of Michael Colono’s out of court statements, and as evidence of his state of mind at the time of the incident in question. See Commonwealth v. Mahar, 430 Mass. 643, 650 (2000). The defendant was precluded from mentioning the Colono convictions in his opening statement.
During trial, defense counsel was permitted to read the fact of the convictions of Michael Colono into the record but was not permitted to go into facts of the underlying incident. During trial, defense efforts to introduce evidence of prior violent conduct of Michael Colono was characterized by the Commonwealth after objections to defendant’s questions during cross-examination of Samuel Rodriguez concerning Michael Colono being “an impulsive guy” who would “make comments to people and then there would be trouble” were sustained. The defense argued the evidence was relevant to Michael Colono’s state of mind and whether the defendant had the upper hand instantly. The Commonwealth objected on the ground the evidence was propensity evidence, “[fit’s a propensity argument, and they have been trying to make this every which way... It has to be their (Colono and Rodriguez) state of mind that’s known to the defendant. It is not known to the defendant.” [Tr. 9/21/04 195.] The defense was allowed a limited inquiry concerning Rodriguez’s state of mind but not Michael Colono’s.
The defense attempted to introduce other information concerning Michael Colono. A proffer was made at Tr. 9/21/04 pp. 289-96. The defense wanted to introduce evidence concerning Michael Colono’s street fighting ability including the fact that Rodriguez had said Michael Colono never lost a fight except one with his brother. Counsel stated at p. 290 “These issues are critical in this case. Who was the first aggressor, which this also goes to . . .” The Commonwealth opposed the introduction saying, “I don’t think you can characterize that when Mr. Colono is unarmed and the person attacking him has the weapon . . .”[5] Later, when Michael Colono’s brother was called to testify the court excluded testimony concerning prior acts of fighting or combativeness. “History of combative prior acts of combat or fighting? That’s not coming in. Characterizations are not coming in.” [Tr. 9/27/04 p. 74.]

DISCUSSION

The critical and most contested issue at trial of this case was whether the defendant was acting in self-defense or whether he was the aggressor. The importance of the issue is reflected in the Commonwealth’s requested juiy instruction numbered 18:
Generally, one who provokes or initiates an assault may not lawfully defend himself with force, unless he or she withdraws from the conflict in good faith and announces his intention to withdraw. [Commonwealth Request for Juiy Instructions, p. 18.]
A defendant is not entitled to act in self-defense if he is the attacker and did not withdraw from the *627 affray. See Commonwealth v. Brum, 441 Mass. 199, 208 (Mass. 2004); Commonwealth v. Fisher, 433 Mass. 340, 352 (2001).
With respect to the question of who was the aggressor, at the time this case was reached for trial, the rule was that “in cases of self-defense, a defendant ‘may introduce evidence of recent, specific instances of the victim’s violent conduct, known to the defendant at the time of the homicide.' ” Commonwealth v. Sok, 439 Mass. 428, 434 (2005), quoting Commonwealth v. Fontes, 396 Mass. 733, 735 (1986) (emphasis supplied); Commonwealth v. Adjutant 443 Mass. at 654. Although the defendant attempted to introduce such evidence concerning both Michael Colono and Samuel Rodriguez as relevant to the issue of who was the aggressor or other theories, it was excluded because the defendant could not establish the condition precedent to its admission, i.e. that he knew of the propensity for violence of either or both men at the time of the incident in issue.
In Commonwealth v. Adjutant 443 Mass., supra, the Court considered whether evidence of specific prior violent acts should be admitted to prove who was the first aggressor. Id The Court recognized that, in the circumstances of that case, such evidence was relevant to whether Rhonda Adjutant acted in self-defense. The Court also recognized that to exclude such evidence deprived the jury of relevant and potentially exculpatory information. Consequently, the Court held “where the identity of the first aggressor is in dispute and the victim has a histoiy of violence, we hold that the trial judge has the discretion to admit evidence of specific acts of prior violent conduct that the victim is reasonably alleged to have initiated, to support the defendant’s daim of self-defense.” Id at 664.
The primary issue raised by the defendant’s Motion is what impact, if any, does the Adjutant case have on his conviction. The identity of the first aggressor was a critical issue at his trial. As the Commonwealth stated, the defendant unsuccessfully attempted to introduce so-called propensity evidence, including specific violent conduct of both Michael Colono and Samuel Rodriguez, “every which way.” The circumstances surrounding the altercation which resulted in the death of Michael Colono demonstrate the issue is not a frivolous one. The defendant has preserved the issue for his appeal which is being perfected.[6]
In Adjutant the Court “adopt[ed) a new common-law rule of evidence.” The defendant Rhonda Adjutant was given the benefit of the rule “(b]ecause the defendant alleged the error and argued for the rule on direct appeal, she should have the benefit of this decision.” Id However, the Court also stated, “Otherwise, it shall apply only prospectively.” Id, citing Commonwealth v. Dagley, 442 Mass. 713, 721 n. 10 (2004) [emphasis supplied].
If the defendant can claim the benefit of Adjutant, he is entitled to a new trial. If, having lost the race to an appellate court, he cannot claim the benefit of Adjutant his motion must be denied.
A. The Effect of Adjutant
“Decisional law usually is retroactive.” Commonwealth v. Breese, 389 Mass. 540, 541 (1983). “Only if a decision establishes ‘a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed,’ do we consider whether it should have only prospective application. Id. at 542, quoting Chevron Oil Co. v. Huson, 404 U.S. 97, 106 (1971).” Commonwealth v. Begin, 394 Mass. 192,204 (1985) (O’Connor, J. dissenting); Commonwealth v. Waters, 399 Mass. 708, 712 (1987), citing Commonwealth v. Breese, 399 Mass. 540, 541 (1983).
Generally, where the new rule is based on a constitutional right, it will be applied retroactively “if (1) a case is on direct appeal . . . when the new rule is announced, and (2) the issue was preserved at trial." Commonwealth v. D’Agostino, 38 Mass.App.Ct. 206, 209 (1995), citing Commonwealth v. Figueroa, 413 Mass. 193, 202 (1992), quoting from Commonwealth v. Libran, 405 Mass. 634, 645 (1989).
By contrast, “(w]hen announcing a new common-law rule, a new interpretation of a State statute, or a new rule in the exercise of our superintendence power, there is no constitutional requirement that the new rule or new interpretation be applied retroactively, and . . . [the Court is] therefore free to determine whether it should be applied only prospectively.” Commonwealth v. Dagley, 442 Mass. at n. 10, citing Murtishaw v. Woodford, 255 F.3d 926, 956 (9th Cir. 2001), cert. denied, 535 U.S. 935 (2002); Sanders v. Fair, 728 F.2d 557, 558-59 (1st Cir.), cert. denied, 467 U.S. 1254 (1984).
In Adjutant, the Court cited Dagley in support of the Court’s determination that the new rule should be applied prospectively only. Adjutant, 443 Mass. at 667. What is significant about the cases relied on in Dagley, and Dagley itself is that in none of the cases was the purpose to be served by the new rule “central to an accurate determination of innocence or guilt.” Commonwealth v. Bray, supra, quoting Teague. In Dagley, the Court explicitly stated that “a DiG-iambattista instruction[7] would have had no impact on the jury’s decision,” in deciding to apply it prospectively. Dagley, 442 Mass. at 722 n. 11. In Commonwealth v. Day, 387 Mass. 915, 920-21 (1983), the new rule being applied imposed a “beyond a reasonable doubt” burden on the Commonwealth to prove a knowing and intelligent waiver of constitutional rights by a defendant. The rule was applied “to decisions made on motions to suppress after the date of [the] opinion,” (prospectively) because it was not constitutionally mandated. Id. at 921 n. 10.
In Commonwealth v. Rosario, 422 Mass. 48, 56 (1996), the new rule stated that “[a]n otherwise admissible statement is not to be excluded on the ground of unreasonable delay in arraignment, if the statement *628 is made within six hours of the arrest,” or “if the defendant made an informed and voluntary written or recorded waiver of his right to be arraigned without unreasonable delay.” In denying retroactive effect to the defendant however, the Court reasoned that the defendant had not been threatened or coerced, that a judicial determination of probable cause to justify the arrest had been made, and also stated that the police “had little basis to conclude that [delaying the arraignment to permit them to question the defendant] was a violation” of the rule. Id. at 57-58.
The new rule in Commonwealth v. Sanders, 383 Mass. 637, 640-41 (1981), called for individual voir dire of prospective jurors as to racial prejudice in cases involving interracial rape. This was extended to cases involving a murder where the defendant and victim were of different racial backgrounds in Commonwealth v. Young, 401 Mass. 390, 399 (1987). The Court discussed that the approach taken by the Supreme Court in this area only granted relief to a defendant where racial issues were “inextricably bound up with the conduct of the trial.” Id., quoting Ristaino v. Ross, 424 U.S. 589, 594 (1976). The Court did not give retroactive effect to the defendant in Young because nothing in the record indicated “that the defendant was a special target of racial bias, and the subject of racial prejudice was not at issue in the trial.” Id. at 400.
The other two cases relied on by the Court in Dagley, namely Commonwealth v. Ardon, 428 Mass. 496, 498 (1998), and Commonwealth v. Fernandes, 427 Mass. 90, 98 n.3 (1998), discussed the possibility that the Court might require interrogations to be recorded as a prerequisite to introducing a defendant’s statements in evidence. The Court had said that such a rule would not be made retroactive. Fernandes, 427 Mass, at 98 n.3. However, the Court explicitly stated that “there was no substantial likelihood of a miscarriage of justice in failing to record the defendant’s statements or in admitting the unrecorded statements,” based on the circumstances of that case. As in Dagley, and each of the cases cited by Dagley that were previously discussed, denial of retroactive application was not found to be “central to an accurate determination of innocence or guilt.”
As with most rules, there is an exception to the rule that a new rule not constitutionally based is to be applied prospectively only. In Commonwealth v. Bray, 407 Mass. 296, 303 (1990), the Court noted an exception to the rule of prospective application which was articulated in Teague v. Lane, 489 U.S. 288 (1989), a case involving collateral review of a conviction. In Bray at 303, the Court quoted Teague in pertinent part:
. . . The second exception is that a new rule should be applied retroactively if not to do so would “undermine the fundamental fairness that must underlie a conviction or seriously diminish the likelihood of obtaining an accurate conviction.” Teague, supra 109 S.Ct. at 1077. For the exception to apply, the new rule, whether constitutionally based or not, must be “central to an accurate determination of innocence or guilt” in the “basic due process sense.” Id.
The Court expressly announced that the rule in Adjutant is “a new common-law rule of evidence.” Adjutant at 667. That rule was new and not foreshadowed by prior precedents. In the exercise of Court’s superintendence powers, the Court, relying on Commonwealth v. Dagley, 442 Mass., supra, determined that the Adjutant rule will be applied prospectively, i.e. applicable to trials occurring after the issuance of that decision. In Dagley, at n. 10, the Court stated:
The defendant seeks to invoke the standards for retroactive application that we have used when adopting new criminal rules that stem from a constitutional requirement. In those cases, we have allowed the defendant to claim the benefit of the new rule if his case was pending on direct appeal at the time the new rule was announced, and he had either preserved the issue at trial or qualified for the so-called clairvoyance exception. See Commonwealth v. D’Agostino, 421 Mass. 281, 284 & n. 3 (1995); Commonwealth v. Figueroa, 413 Mass. 193, 201-03 (1992), S.C., 422 Mass. 72 (1996). See also Griffith v. Kentucky, 479 U.S. 314, 322 (1987) (newly declared constitutional rule must be applied to cases pending on direct review). Here, however, we are not dealing with a rule that has its source in any constitutional mandate. When announcing a new common-law rule, a new interpretation of a State statute, or a new rule in the exercise of our superintendence power, there is no constitutional requirement that the new rule or new interpretation be applied retroactively, and we are therefore free to determine whether it should be applied only prospectively. See Murtishaw v. Woodford, 255 F.3d 926, 956 (9th Cir. 2001), cert. denied, 535 U.S. 935 (2002); Sanders v. Fair, 728 F.2d 557, 558-59 (1st Cir.), cert. denied, 467 U.S. 1254 (1984).
Notwithstanding the determination that the new rule would apply prospectively, the Court did in fact provide for limited retroactive application of the new rule to Adjutant herself, stating “[b]ecause the defendant alleged the error and argued for the rule on direct appeal, she should have the benefit of this decision.” Adjutant at 667.
The Court explicitly stated in Adjutant that “the proffered evidence went directly to the heart of the case’s central dispute,” namely who was the aggressor. Adjutant, 443 Mass, at 666. “Given the probative value of the excluded evidence, it may have been enough to create reasonable doubt of the defendant’s guilt.” The Adjutant rule was directed at the fundamental truth-finding function of that trial. Therefore, it can be inferred that Adjutant was given the benefit of the new rule because the jury that decided her case was deprived of evidence which, in the words of Teague, were “central to an accurate determination of innocence or guilt.”
*629 In Adjutant, the Court noted the “overwhelming trend” in admitting this type of evidence has been based upon “the view that evidence reflecting the victim’s propensity for violence has substantial probative value and will help the jury identify the first aggressor when the circumstances of the altercation are in dispute.” Adjutant at 656 and cited cases. As far as Adjutant was concerned, the Court had no doubt that the evidence of prior violent conduct was relevant to her case, stating that a victim’s history of prior violent conduct “is probative, but certainly not determinative, of whether the victim was the first aggressor where the defendant claims self-defense.” Id. 657 n. 11.
The facts and circumstances of this case are not dissimilar to those of Adjutant particularly with regard to the importance of the issue of who was the aggressor, and the availability of self-defense. The Commonwealth’s version and the defendant’s version of events of April 12, 2003 are inconsistent and irreconcilable as to who the aggressor was. Credibility of witnesses was a important consideration. The forensic evidence was not conclusive of the issue of who was the aggressor and could not, in and of itself, negate self-defense.[8] The juiy that decided this case was also deprived of evidence which, in the words of Teague, were “central to an accurate determination of innocence or guilt.”

B. Preserving the Issue

The Commonwealth asserts that since the defendant did not preserve the issue at trial, he effectively waived the issue and, therefore, should not have the benefit of Adjutant “At its’ core, the waiver doctrine states that a defendant must raise a claim of error at the first available opportunity.” See Commonwealth v. Randolph, 438 Mass. 290, 293-94 (2002). The defendant identified witnesses with knowledge of certain incidents involving Michael Colono or Samuel Rodriguez in his witness list. That precipitated the Commonwealth’s filing a Motion in Limine. In response, the defendant objected to the exclusion of evidence of prior violent conduct of both Michael Colono and Rodriguez as sought 'in the Commonwealth’s Motion in Limine. “A motion in li-mine, seeking a pretrial evidentiary ruling, is insufficient to preserve appellate rights unless there is an objection at trial.” Commonwealth v. Whelton, 428 Mass. 24, 25 (1998), citing Commonwealth v. Keniston, 423 Mass. 304, 308 (1996). However, the Motion in Limine did not end the issue. During trial, the Court allowed general inquiries as to Colono’s hot-headedness and temper during the cross-examination of Rodriguez, but, over the defendant’s objections, precluded the defense from getting into specific instances. The defense made an offer of proof and argued that evidence of prior violent conduct of Michael Colono and Samuel Rodriguez was relevant to whether the defendant initiated physical combat and gained an immediate physical advantage over Colono. The court excluded the proffered evidence. The Court also limited questioning of Rodriguez’s brother, Ricardo, concerning what Rodriguez had told the defense about the incident on April 12th, and precluded evidence of bad acts or a general discussion of a history of combative prior acts.
The defendant did not expressly challenge the rule articulated in Commonwealth v. Sok, 439 Mass. at 434. A similar situation was present in Commonwealth v. Mahar, 430 Mass. 643, 650 (2000), where the defendant’s counsel had argued the substance of Rule 806 of the Proposed Rules of Evidence when seeking admission of the impeaching evidence, but not the rule. The court stated in Mahar that the “defendant is entitled to have his appeal decided as if the judge’s ruling constituted error.” Therefore, the issue of allowing evidence of prior violent conduct with respect to the question of who was the aggressor and whether the defendant was entitled to use force in self-defense was not waived. Compare Commonwealth v. Randolph, 438 Mass. 293 (2002). See also Roswell v. Commonwealth, 432 Mass. 1016, 1018 (2000) (“If a defendant fails to raise a claim that is generally known and available at the time of trial or direct appeal or in the first motion for post-conviction relief, the claim is waived”), as cited in Randolph
Considering the pre-trial and trial attempts and disputes as to the admissibility of such evidence, the defendant preserved the issue at trial.
C. Conclusion
The “threshold question ... is whether the major purpose of the [new rule] was to overcome an aspect of the criminal trial that substantially impaired its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials. In making this inquiry, . . . [the Court] bearfs] in mind that the extent to which a practice infects the integrity of the truth-determining process of trial ‘is necessarily a matter of degree.’ ” Breese, 389 Mass, at 549, quoting Johnson, 384 U.S. at 729.
In Adjutant the Court stated that the new rule “went directly to the heart of the case’s central dispute,” which was the determination of the initial aggressor. Adjutant 443 Mass, at 666. “Given the probative value of the excluded evidence, it may have been enough to create reasonable doubt of the defendant’s guilt.” Id. Clearly this goes toward the threshold inquiry discussed in Breese concerning the accuracy of a guilty verdict.
The Supreme Court said in Griffith, 479 U.S. at 328, that it “hardly comports with the ideal of ‘administration of justice with an even hand,’ ” where “one chance beneficiary — the lucky individual whose case was chosen as the occasion for announcing the new principle — enjoys retroactive application, while others similarly situated have their claims adjudicated under the old doctrine.” Id., quoting Hankerson v. North Carolina, 432 U.S. 233, 246 (1977). The defendant in this case raised and preserved the issue. However, he lost the race to the appellate court.
*630 The Pennsylvania Supreme Court has stated that the retroactive application of a new rule “represented the implicit acceptance of the view that fairness dictated the applicability of the newly announced principle to all similarly situated litigants.” Commonwealth v. Hernandez, 498 Pa. 405, 411 (1982), citing Commonwealth v. Ill. 492 Pa. 100, 111 (1980). The Court said it was “fair to conclude that all of those litigants were in the same situation and the outcome of their lawsuit should not depend on a race to the courthouse.” Id.
The California Supreme Court took a different approach in Nga Li v. Yellow Cab Company of California, 13 Cal.3d 804, 829-30 (1975). In applying a new rule only prospectively, the Court reasoned that “it would provide incentive in future cases for parties who may have occasion to raise ‘issues involving renovation of unsound or outmoded legal doctrines.’ ” Nga Li, 13 Cal.3d at 830. The Court stated that they “fully appreciate^] that there may be other litigants now in various stages of trial or appellate process who have also raised the issue here before us but who will nevertheless be foreclosed from benefiting from the new standard by the rule of limited retroactivity.” Id. However, the Court upheld the approach anyway, stating that “(i)nequify arguably results from according the benefit of a new rule to the parties in the case in which it is announced but not to other litigants similarly situated in the trial or appellate process who have raised the same issue. But we regard the fact that the parties involved are chance beneficiaries as an insignificant cost for adherence to sound principles of decision-making.” Id., quoting Stovall v. Denno, 388 U.S. 293, 301 (1967).
In Adjutant, the defendant was given the benefit of the new rule because the excluded evidence “went directly to the heart of the case’s central dispute.” Under all of the circumstances surrounding the crime for which the defendant was charged and the procedure posture of his case, fairness requires that he be given the benefit of that rule.
“Under rule 25(b)(2), a trial judge has the discretion to award a new trial on the ground that the verdict, although supported by legally sufficient evidence, is against the weight of the evidence, or because the integrity of the evidence is suspect.” Commonwealth v. Fowler, 425 Mass. 819, 827 (1997). The defendant Pring-Wilson was deprived of evidence that “went directly to the heart of the case’s central dispute.” Id. The court finds that, although the evidence was legally sufficient to warrant the verdict against the defendant, the integrity of that verdict is suspect where the jury did not have the benefit of relevant evidence critical to the issue of whether the defendant was the agressor or whether he was acting in self-defense.

ORDER

It is therefore ORDERED that the defendant’s Motion for Relief from Judgment Pursuant to Mass.R.Crim.P. 25(b)(2) is ALLOWED. The court ORDERS that the defendant’s conviction be vacated and there be a new trial.
Hearing on the question of bail shall be held Monday, June 27, 2005 at 2:00 pm.
The Court further ORDERS that this decision be stayed until July 1, 2005 to afford the Commonwealth the opportunity to seek such appellate relief from this order or for any bail order as may be deemed appropriate.

On March 14, 2005, the court, acting sua sponte relying upon Mass.R.Crim.P. 25(b)(2) as construed in Commonwealth v. Fowler, 425 Mass. 819 (1997), Commonwealth v. Doucette, 408 Mass. 454 (1990), and Commonwealth v. Preston, 393 Mass. 318 (1984), notified the parties that a hearing would be held to determine whether the conviction of the defendant should be vacated and a new trial ordered on the grounds that, although the court viewed the evidence as legally sufficient to support the verdict returned by the jury, the integrity of the evidence has been rendered suspect as a result of the decision of the Supreme Judicial Court in Commonwealth v. Adjutant

Samuel Rodriguez did not testily that he saw the knife in the defendant’s hand as he approached the vehicle because he could not see the defendant’s hand. He did, testify however, that it was the defendant and not Michael Colono who opened the car door.

Michael Colono had been arrested for malicious destruction of property in 2001 arising from an incident in a pizza restaurant during which Michael Colono threw money in the face of the cashier on duty’s face and kicked the front door, shattering the glass. Colono had also been involved in a trespass charge. It was reported that, at the time of his arrest, he was belligerent with the police officers. He threatened to have his “Lion Boys” take the police “out.” Further, there was also evidence proffered, including a letter written from Colono’s mother to the Juvenile Court concerning Michael Colono's use of alcohol and its influence on his conduct.

Rodriguez had been arrested twice for assault and battery, once for punching a former girlfriend in the face, and another time for throwing eggs at a vehicle and subsequently attacking a motorist who stopped. Rodriguez had also been arrested for unlawfully canying a firearm and at the time of his confrontation with police he had run and attempted to pull the loaded gun from his waistband before being tackled by police. A third arrest for assault and battery occurred in 2000 when he had an argument with his mother and sister and slammed a cup in his sister’s face, leaving her with a swollen, puffy, and bloodshot eye according to the police report. According to the report, Rodriguez also grabbed a knife which he began swinging at his sister’s husband when he confronted Rodriguez.

Defense counsel objected to the assumptions in the Commonwealth’s response. See tr. P. 294.

Notice of assembly of the record has not yet issued.

DiGimbattista established the rule requiring a cautionary instruction where a custodial interrogation was not recorded.

According to the Medical Examiner’s testimony, there were four or five stab wounds. With the exception of the fatal wound, the other wounds were not life threatening. The deepest wound was the fatal wound. It was A inch deep and it nicked Michael Colono’s heart. The blade of the knife was 4'/2 inches.